**Stanley C. KOPCZYNSKI, Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant.**

**No. 90–CV–71575–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 11, 1992.

---

Henry E. Sarnacki, Mt. Clemens, Mich., for plaintiff.

Phillip L. Sternberg, Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C., Farmington Hills, Mich., for defendant Mich. Conference of Teamsters Welfare Fund.

Francis J. Carey, Rosemont, Ill., for defendant Southeast and Southwest Areas Pension Fund.

David A. Sawyer, Russell N. Luplow, P.C., Bloomfield Hills, Mich.

## OPINION

GILMORE, District Judge.

Plaintiff Stanley C. Kopczynski brought the instant suit alleging that Defendant, Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund"), wrongfully denied him pension benefits in violation of the Employee Retirement Income Security Act as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and in violation of state law. Plaintiff maintains that he should be awarded "30–and–Out" pension benefits, whereas the Pension Fund has determined that Plaintiff is eligible only for a less lucrative 20 year service pension. Before the Court is the Pension Fund's motion for summary judgment and motion for reconsideration of a previous ruling regarding ERISA preemption of a state law claim. For the reasons more fully developed herein, the Court grants the motion for summary judgment and, upon reconsideration, finds that ERISA preempts the state law claim.

I

On June 6, 1991, Plaintiff filed an eight count complaint against the Pension Fund, as well as against the Michigan Conference of Teamsters Welfare Fund ("Welfare Fund"). Plaintiff alleged that the Pension Fund wrongfully denied pension benefits (Count I), the Welfare Fund wrongfully denied welfare payment reimbursements (Count II), the Pension Fund breached its

fiduciary duty to provide accurate information (Count III), the Pension Fund owed Plaintiff a higher monthly benefit and the Welfare Fund had to provide Plaintiff with requested information (Count IV), both Funds were liable for breach of contract (Count V), the Pension Fund fraudulently misrepresented information (Count VI), the Pension Fund was estopped from denying the truth of its representation (Count VII), and both Funds were liable to Plaintiff for prejudgment interest (Count VIII). Included in the complaint were requests for punitive damages and a demand for jury trial.

At a hearing on March 7, 1991, the Court ordered that the jury demand and the claims for punitive damages be stricken. In addition, the Court granted the Pension Fund's motion to dismiss Counts V and VII after determining that these state law claims were preempted by ERISA. The Court, however, denied the motion to dismiss Count VI, the fraudulent misrepresentation claim, after determining that this claim was not preempted by ERISA. On April 15, 1991, the Court denied the Pension Fund's motion for reconsideration as to Count VI.

On September 10, 1991, the Court signed a stipulated order dismissing the Welfare Fund from the case, thereby extinguishing Count II which was directed exclusively against the Welfare Fund. The parties have also agreed to the dismissal of Count VIII.

On August 30, 1991, the Pension Fund filed a motion for summary judgment as to the remaining ERISA claims, Counts I, III and IV, and renewed its motion to dismiss Count VI, the state law claim for fraudulent misrepresentation. On October 3, 1991, the Court heard oral argument on the motions.

## II

Plaintiff is a retired member of the International Brotherhood of Teamsters ("Teamsters"). In 1955, Plaintiff began working as a driver for Bejin Trucking Company. It is not disputed that during Plaintiff's employment at Bejin, the trucking company made eleven weeks of contributions to the Central States Pension Fund on Plaintiff's behalf.

There is, however, a question as to whether contributions were made on Plaintiff's behalf between the years of 1956 and 1961. Between those years, Plaintiff was employed as a driver by Eddy's Cartage, Appliance Delivery Service, Royal Moving, Co., Farmers Food Service and Cadillac Enameling, Inc. Plaintiff has submitted letters from Eddy's Cartage and Royal Moving stating that those two companies made pension contributions on Plaintiff's behalf. Although these letters do not indicate to whom these payments were made, Plaintiff asserts that the pension payments were made to Central States Pension Fund. The Pension Fund, however, denies ever receiving contributions on Plaintiff's behalf between 1956 and 1961 and further states that Plaintiff's employers during that period were not contributing employers.

Plaintiff began employment with Love Brothers in 1961. It is uncontested that contributions were made to the Pension Fund on Plaintiff's behalf at that time. Plaintiff was employed by contributing companies until he was laid off from his position with Chatham Supermarkets in 1985.

After being laid off, Plaintiff applied for a "30-and-Out" retirement benefit which would provide $1,000/month in benefits. However, the Pension Plan Trustees ("Trustees") denied Plaintiff the 30-and-Out benefits, stating that Plaintiff did not meet the requirements. Instead, the Trustees approved a 20 year service pension, providing Plaintiff $700/month. Plaintiff appealed the denial and exhausted the appeals procedure.

Up until 1985, the highest paying retirement benefit plan provided by Central States Pension Fund was the 20 year service pension. The Pension Plan in effect prior to 1985 provided that to earn this level of benefits, an employee must have 20 years of service credit. "Service credit" is defined in the Pension Plan as "the combined contributory service credit and noncontributory service credit earned by a participant...." Under this definition, a par-

ticipant would earn service credit for any year in which he was employed in a Teamster related industry, regardless of whether the employer was making contributions to the Pension Fund. In other words, a year of employment with either a contributing or a non-contributing employer was credited equally toward the 20 year service pension.

In 1985, the Trustees amended the Pension Plan to allow for an even higher level of retirement benefits—the "30–and–Out" pension. This pension was for any participant who had "at least 30 years of contributory service credit at the time he stops working in covered service or becomes an inactive participant." The Pension Plan defines "contributory service" as service earned by a participant for "employment with a contributing employer required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement."

The Pension Plan also defines "covered service" as being the combined non-contributory service and contributory service of a participant. Thus, all covered service counts toward a 20 year service pension, but only that portion of covered service which is contributory · service is counted toward a 30–and–Out pension.

Plaintiff originally applied for a pension in 1975. Plaintiff was informed that he had 19½ years of "service credit" toward the 20 year service pension. At the time, there was no relevance to a differentiation between contributory and non-contributory service for purposes of retirement benefits, and "service credit" included both.

On April 23, 1985, the Trustees forwarded correspondence to Plaintiff advising him that he had accumulated 28.5 years of "credited service". The term "credited service" is nowhere found in the Pension Plan as amended in 1985. However, the term is defined in the Pension Plan in effect at the time of the letter to Plaintiff as including both contributory and non-contributory service.[1]

Plaintiff filed a formal application for a 30–and–Out retirement pension in February, 1986. The Trustees denied Plaintiff the 30–and–Out pension. The Trustees pointed to Plaintiff's employment with non-contributing employers between 1956 and 1961 and concluded that Plaintiff did not have sufficient contributory service credit to meet 30–and–Out requirements. Although the employment with non-contributing employers counted as "service credit" or "credited service," the Trustees determined that this time did not count toward the 30 years of "contributory service credit" required for a 30–and–Out pension.

Plaintiff maintains that he was employed by contributing employers during 1956 and 1961 and that he has · sufficient contributory service credits to be eligible for a 30–and–Out pension. Plaintiff claims that the Pension Fund currently owes Plaintiff the difference between the accepted and the appropriate pension benefits, totalling $22,900 as of June 1, 1990, with this amount continuing to accrue at the rate of $300.00 per month.

Furthermore, Plaintiff states that the Trustees violated the fiduciary duty owed to Plaintiff to provide accurate information. Plaintiff maintains that the Trustees supplied Plaintiff with deliberately misleading information and additionally failed to provide requested information. Plaintiff seeks a statutory penalty of $100 per day against the Pension Fund for failure to provide required ERISA materials.

Plaintiff also alleges that in reliance upon the misleading information provided by the Trustees, Plaintiff has suffered damages in excess of $25,000 for embarrassment, humiliation, nervous depression, mental anguish, loss of enjoyment of life, and injury to personal dignity. Plaintiff seeks recovery of this amount and requests that the Court order the Pension Fund to pay all future benefits to Plaintiff in the amount of $1,000 per month, the pension for 30–and–Out retirement.

---

1. Although the 1985 amended Pension Plan was made retroactive to January 1, 1985, it was not approved by the Trustees until a board meeting in September, 1985—five months *after* the letter was sent to Plaintiff.

### III

As a preliminary matter, the Court finds that Counts I and IV are essentially the same. Both counts allege that the 30–and–Out pension was wrongfully denied and seek the determination that Plaintiff is entitled to the 30–and–Out pension. These two claims are necessarily brought pursuant to 29 U.S.C. § 1132(a)(1)(B), for wrongful denial of benefits and/or the clarification of rights to future benefits. Thus, the motion for summary judgment as to these two claims will be considered together.

■ The Court next must determine what standard of review to apply to the Trustees' denial of Plaintiff's pension benefits. The Supreme Court has recently stated that "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If the benefit plan gives discretionary authority to the administrator, then the exercise of that authority is reviewed under the arbitrary and capricious standard. *Id.*

The Central States Pension Plan provides that the Trustees are vested with "discretion and final authority" in making benefit claims decisions and are "vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund." This grant of discretion convinces the Court that the deferential arbitrary and capricious standard of review is appropriate in this case. Under the arbitrary and capricious standard, this Court must uphold the Trustees' decision if evidence in the record reflects any reasonable explanation for the decision. *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct.1924, 109 L.Ed.2d 288 (1990).

■ Defendant has brought this motion for summary judgment on the § 1132(a)(1)(B) claims, asserting that there is no question of fact that the Trustee's determination of Plaintiff's pension level was based upon reasonable criteria and was not arbitrary and capricious. To support this assertion, Defendant submits the affidavit of Albert E. Nelson, the Benefits Director for the Pension Fund. Nelson's affidavit provides that for the years between 1956 and 1961, none of Plaintiff's employers was obligated by agreement to make contributions to the Pension Fund on Plaintiff's behalf, and none in fact did make any contributions. Nelson concludes that, at the time of Plaintiff's retirement, Plaintiff had 23 years of contributory service credit. Thus, although eligible for the 20 year service pension, Plaintiff fell short of the 30 years contributory service credit needed for the 30–and–Out pension.

This Court finds that Defendant has provided a reasonable explanation for the denial of benefits and has met its initial burden under *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), to support a grant of summary judgment. To avoid summary judgment, Plaintiff must now show by "affidavits, or by the depositions, answers to interrogatories, and admissions on file ... specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553 (quotations omitted).

To support his claimed eligibility for 30–and–Out benefits, Plaintiff argues that his employers between 1956 and 1961 *did* make contributions to Central States Pension Fund. Plaintiff submits letters from Edward Wisniewski, the Owner of Eddy's Cartage, and Bobby Wells, the owner of Royal Moving Co, each of whom states that the company made weekly pension payments on Plaintiff's behalf. If these years are then counted as contributory service credit, Plaintiff maintains that he has enough credit to qualify for the 30–and–Out pension.

The Court finds that these unsworn statements do not create a question of fact to defeat summary judgment. Although the letters indicate that pension benefits were paid, they do not indicate to whom. Defendant, on other hand, has provided sworn testimony that there were no contri-

butions received from these companies, and no collective bargaining agreement requiring that these companies make contributions.

More importantly, the Pension Plan clearly provides that contributory service credit can only be earned from "employment with a contributing employer required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement." Yet Plaintiff has admitted in his deposition that he has no proof of any collective bargaining agreement requiring contributions to Central States Pension Fund on Plaintiff's behalf. Therefore, there is an absence of evidence to support Plaintiff's case and Plaintiff not met his burden under *Celotex* to resist summary judgment.

Plaintiff offers another argument challenging the validity of the Trustees' denial of 30–and–Out pension benefits. Plaintiff claims that the Trustees' action denying him benefits was based upon discriminatory application of the Pension Plan and thus was arbitrary and capricious. Plaintiff points to the example of a fellow employee, Harry Crousore, who was laid off at the same time as Plaintiff and is currently receiving 30–and–Out pension benefits.

Plaintiff's claim of discrimination, however, is not supported by any evidence. Indeed, the Nelson affidavit establishes that Crousore was employed by contributing employers since March, 1957, and had 29 years of contributory service credit by the time of his layoff. Crousore was then allowed to make self-contributions for a period of 37 weeks to bring himself to the 30–and–Out pension level. Plaintiff, who had only 23 years of contributory service credit, could not make self-contributions to bring himself to a 30–and–Out pension benefit level. Thus, the Trustees' determination of Crousore's eligibility and Plaintiff's ineligibility for the 30–and–Out pension was not based upon discriminatory application of the Pension Plan, but was based upon the number of years of contributory service credit each participant had accumulated. The Court therefore concludes that summary judgment as to the § 1132(a)(1)(B) claims is proper.

In addition to the § 1132(a)(1)(B) claims, Plaintiff alleges in Count III that the Trustees violated § 1132(c) by failing to provide complete and accurate information to Plaintiff. Plaintiff states that the Trustees sent Plaintiff a letter in April of 1985 that indicated Plaintiff had 28.5 years of credited service. However, the Trustees claimed in 1986 that Plaintiff had only 23 years of contributory service credit. Thus, at least one of these two representations is inaccurate and is in violation of the duty in ERISA to provide accurate information.

The Court finds no merit to Plaintiff's claim. Built into Plaintiff's argument is the assumption that "credited service" and "contributory service credit" are synonymous. In fact, the 1980 Pension Plan, in effect at the time of the 1985 letter to Plaintiff, defined "credited service" as including both contributory and non-contributory service. The number of years listed as "credited service" in the letter did not indicate the number of "contributory service credits" earned toward a 30–and–Out pension. The 30–and–Out pension was not yet in existence at the time of the letter to Plaintiff. Thus it is entirely possible, indeed the evidence supports the fact, that Plaintiff had 28.5 years of "credited service" in 1985 and 23 years of "contributory service credit" in 1986. Plaintiff has no evidence showing that the Trustees provided invalid information and the Trustees therefore cannot be found to have breached a fiduciary duty to provide accurate information.

Count III also encompasses a claim that the Trustees breached their duty to disclose information through a failure to provide annual reports. However, the Plaintiff has provided no factual support for this claim. Nelson's affidavit provides that all required materials were in fact delivered to Plaintiff, and Plaintiff does not present any admissions or affidavits to controvert that assertion. Thus Plaintiff has failed to present a question of fact and summary judgment is appropriate.

## IV

■ Defendant Pension Fund also brings a motion for summary judgment as to Count VI, the fraudulent misrepresentation claim. Additionally, the Pension Fund renews its motion to dismiss Count VI based on the theory that ERISA preempts this state cause of action. Although the Court has already denied a motion to dismiss Count VI, and then denied a motion for reconsideration of that denial, the Court believes that subsequent legal and factual developments necessitate the revisitation of the preemption issue.

Congress constructed the provisions of ERISA to preempt most state laws. *See Ingersoll–Rand v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). ERISA's preemption clause, 29 U.S.C. § 1144(a), provides that the ERISA statute supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."[2] The Supreme Court has indicated the term "relate to" as used in § 1144(a) is meant in its broadest sense. *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

This Court previously determined that the state law claims for breach of contract and promissory estoppel related to the Pension Plan and thus were preempted by ERISA. However, the Court determined that Plaintiff's claim of fraudulent misrepresentation was not preempted. The Court premised this holding upon the reasoning provided in *Perry v. P\*I\*E\* Nationwide, Inc.,* 872 F.2d 157 (6th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). In *Perry,* the Court of Appeals adopted the reasoning of *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), that "preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted." *Perry,* 872 F.2d at 162. The Court deter-

mined that a claim of fraudulent inducement to join an ERISA plan was not preempted because the Court was uncertain whether ERISA's enforcement provision, 29 U.S.C. § 1132, could provide the requested remedy of rescission of contract and refund of wage reductions.

Although acknowledging that the present case concerned a claim of fraudulent misrepresentation to someone who was already a plan participant, and thus was distinguishable from the fraudulent inducement claim considered in *Perry,* this Court found the analysis in *Perry* compelling. *See also Springer v. Wal–Mart Assoc. Group Health Plan,* 714 F.Supp. 1168, 1170 (N.D.Ala.1989) (stating that *Perry* analysis goes in "desirable different direction"), *rev'd on other grounds,* 908 F.2d 897 (11th Cir.1990). The Court noted that Plaintiff here seeks damages for embarrassment, humiliation, nervous depression, mental anguish, loss of enjoyment of life, and injury to personal dignity resulting from alleged misrepresentations. Because the ERISA enforcement provision, § 1132, does not provide a remedy for injuries of this nature, the Court concluded that the claim for fraudulent misrepresentation should not be preempted.

However, the above analysis needs to be reconsidered in light of new Sixth Circuit case law and in light of Plaintiff's deposition. Subsequent to the decision in *Perry,* the Sixth Circuit Court of Appeals decided the case of *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991). In *Cromwell,* the plaintiffs asserted a claim for negligent misrepresentation based upon a promise of coverage that was not kept. The Court determined that the misrepresentation claim was preempted by ERISA and, citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), stated that "it [is not] relevant to an analysis of the scope of federal preemption that appellants may be left without remedy." *Cromwell, supra,* 944 F.2d at 1276.

---

**2.** A "saving clause" provides that this preemption will not apply to "any law of any State which regulates insurance, banking or securi-

ties." 29 U.S.C. § 1144(b)(2)(A). However, the saving clause is not applicable in this case.

The basis for this apparent reversal of the *Perry* analysis is unclear. This Court has read the *Caterpillar* case carefully and has failed to find any support for the language in *Cromwell*. Indeed, *Caterpillar* discusses only the Labor Management Relations Act and is not even an ERISA case. Moreover, an even more recent Sixth Circuit case, *International Resources Inc. v. New York Life Ins. Co.*, 950 F.2d 294 (6th Cir.1991), cites *Perry* with approval and states that "ERISA will not preempt state law claims based on wrongs for which ERISA provides no remedy." *Id.* at 298.

Although concerned about the reasoning in *Cromwell* and confused about the status of the remedy-focused analysis provided in *Perry*, this Court is bound nonetheless by the holding in *Cromwell* that a claim for misrepresentation is preempted. The Court sees no distinguishing feature between this case and *Cromwell* to avoid the conclusion that Plaintiff's misrepresentation claim is preempted.

This Court's determination that Count VI is preempted by ERISA is buttressed by Plaintiff's testimony taken at deposition subsequent to the previous ruling on ERISA preemption. Plaintiff's deposition shows that his claim for fraudulent misrepresentation is exclusively premised upon the information provided to Plaintiff concerning the number of service credits earned with the Pension Fund. Particularly revealing is the following excerpt:

Q: Could you tell me, Mr. Kopczynski, how this what you say is fraudulent misrepresentation relates to the Central States Pension Plan? Does it relate to your collecting a benefit from Central States?

A: Exactly.

Q: Does it have a connection with the Central States Pension Plan somehow?

A: Because I assume when they stated 28 and a half years, I felt that's what I had coming....

(Deposition Transcript, July 24, 1991, at 37). In this exchange, Plaintiff admits that the claim of fraudulent misrepresentation relates to the pension plan in a manner meant to be preempted by ERISA.

■ Finally, the Court notes that even were it to hold that ERISA does not preempt the claim for fraudulent misrepresentation, the Court would grant summary judgment on that claim. To prevail on a claim of fraudulent misrepresentation under Michigan law, Plaintiff would have to show:

1) the defendant made a material representation, 2) it was false, 3) the defendant knew it was false when made, or made it recklessly, without knowledge of its truth and as a positive assertion, 4) it was made with the intention to induce reliance by the plaintiff, 5) the plaintiff acted in reliance upon it, and 6) the plaintiff thereby suffered injury.

*State–William Partnership v. Gale*, 169 Mich.App. 170, 178, 425 N.W.2d 756 (1988).

The Pension Fund has presented evidence establishing that there was no false representation of fact. Plaintiff has not presented any factual evidence calling into question the Pension Funds' position. At best, Plaintiff has shown that he misunderstood what "credited service" meant in the 1985 letter sent to him. But, as discussed above, the term was defined in the Pension Plan and does not reflect a misrepresented fact. Thus, there is an absence of evidence on an essential element of the claim with respect to which the Plaintiff bears the burden of proof. Summary judgment would therefore be appropriate. *See Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552.

### V

Based upon the reasons provided herein, the Court grants Plaintiff's motion for summary judgment as to Counts I, III and IV. The Court also dismisses Counts VI and VIII and, dismisses the case in its entirety.

IT IS SO ORDERED.