**Alexander YENYO and Marvin Bowser, Plaintiffs,**

v.

**COMMUNICATIONS SATELLITE CORPORATION and John Rose, Defendants.**

Civ. No. PJM 93–2298.

United States District Court, D. Maryland, Southern Division.

Oct. 6, 1995.

James R. Klimaski, Washington, DC, for plaintiffs.

Kevin Lowell Wright, Robert J. Smith, Harry W. Burton, Morgan, Lewis & Bockius, Washington, DC, for defendants.

*OPINION*

MESSITTE, District Judge.

I.

Alexander Yenyo and Marvin Bowser have sued Communications Satellite Corporation (COMSAT), alleging their unlawful exclusion from participation in an early retirement incentive plan adopted by COMSAT, their former employer.[1] The suit, brought under the Employment Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), proceeds in three counts: Count I—Breach of Duty of Disclosure; Count II—Breach of Fiduciary Duty; and Count III—Interference with Protected Rights.

Defendants have filed a Partial Motion to Dismiss or in the Alternative for Partial Summary Judgment as to Counts II and III, and an Answer as to Count I.

The Court has determined to grant Defendants' Motion for Partial Summary Judgment as to Counts II and III and, for reasons that will emerge, to dismiss Count I *sua sponte* without prejudice. The Court explains.

II.

Plaintiffs Yenyo and Bowser are former employees of COMSAT Video Enterprises, Inc. (CVE), a subsidiary of COMSAT. Yenyo was employed by COMSAT or its subsidiaries, in one capacity or another, from October 1964 to February 1, 1993. Bowser was similarly employed from June 15, 1966 through on or about April 24, 1993.

Both Plaintiffs are participants in the Communications Satellite Corporation Retirement Plan (the Plan), an employee pension benefit plan, as defined by 29 U.S.C. § 1002(2)(A). COMSAT is the Plan sponsor, as defined by 29 U.S.C. § 1002(16)(B).

On or about October 16, 1992, COMSAT announced that it was offering a Special Voluntarily Retirement Offering (SVRO) for employees in designated COMSAT divisions who were 55 years of age or more and had five years of credited service by December 31, 1992. The amendment provided that the SVRO, a new benefit, would be offered to employees of all COMSAT divisions, *except* COMSAT Mobile and CVE. As of the date of the amendment, Yenyo was 55 years old and had approximately twenty-eight years of service with COMSAT; Bowser was 57 years old with twenty-six years of service. When Plaintiffs asked that they be allowed to participate in the SVRO, their request was refused on the grounds that, as CVE employees, they were not eligible to participate. This suit followed.

Plaintiffs allege, among other things, that they separately asked for copies of the Plan, any amendments authorizing the SVRO, and all board resolutions and copies of minutes of meetings where the Plan was discussed. Yenyo concedes that at some unspecified time he received a copy of the Plan and the Retirement Plan Trust Agreement. Bowser states that he received a letter in February 1993 denying him copies of the documents requested. Defendants state, however, that they supplied to Yenyo's counsel copies of all amendments to the Plan since 1985 and the minutes of the trustees' meetings at which these amendments were discussed or adopted.

III.

A party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "[f]actual disputes that are irrelevant or unnecessary will

---

1. Plaintiffs have also sued John Rose in his alleged capacity as Plan Administrator. Defendants deny that such is actually Rose's position

but, for present purposes, it is unnecessary to decide the issue.

not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## IV.

The Court will defer for the time being its discussion of Count I of the Complaint in which Plaintiffs claim that Defendants breached a duty of disclosure owed them.

In Count II, Plaintiffs allege that the SVRO was not properly authorized according to the terms of the Plan and that by proposing and disbursing benefits under the Plan without proper authorization, COMSAT breached its fiduciary duty to the Plan. Plaintiffs further claim that COMSAT breached its fiduciary duty by arbitrarily excluding them from the SVRO. They seek an injunction ordering Defendants to compensate the Plan for these unauthorized disbursements and to pay them such benefits as they would be entitled to had the Plan been properly offered to them.

■ As to the first alleged breach of fiduciary duty, Plaintiffs have cited no evidence to suggest that the SVRO was not properly adopted by the COMSAT Board of Directors. Indeed, the evidence to the contrary is conclusive. Section 15.1 of the Plan document vests in the Board authority to amend the Plan and the SVRO was adopted as a amendment to it. No breach of fiduciary duty was involved. *See Dzinglski v. Weirton Steel Corp.,* 875 F.2d 1075, 1080 (4th Cir.), *cert. denied,* 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989).

■ The other component of Defendant's alleged breach of their fiduciary duty is that they excluded Plaintiffs from participating in the SVRO. Plaintiffs appear to concede, at least as a general proposition, that decisions regarding plan design or amendments that provide benefits to some employees and not others are business decisions not involving fiduciary obligations under ERISA. *See Fletcher v. Kroger Co.,* 942 F.2d 1137, 1139–40 (7th Cir.1991) (early retirement benefits may be provided only to employees at certain locations, excluding those at other locations); *Belade v. ITT Corp.,* 909 F.2d 736, 737–38 (2d Cir.1990) (early retirement incentive benefits may be offered only to employees in certain departments, excluding those in other departments); *Trenton v. Scott Paper Co.,* 832 F.2d 806, 808–810 (3rd Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988) (plan amendment may provide early retirement benefits only to certain classes of employees, excluding others); *Childers v. Northwest Airlines, Inc.,* 688 F.Supp. 1357, 1360–61 (D.Minn.1988) (stock plan may be offered to certain classes of employees, excluding other classes). What Plaintiffs appear to be arguing is that COMSAT misrepresented its justification for excluding employees of CVE from the SVRO offering and that this misrepresentation constituted a breach of fiduciary duty. Specifically, say Plaintiffs, COMSAT claimed that the reason for excluding CVE from the SVRO was that COMSAT did not want to downsize CVE whereas, within six months thereafter, COMSAT did in fact downsize CVE.

Plaintiffs contend that misleading communications to plan participants concerning plan administration, of which the foregoing is presumably an example, will sustain a breach of fiduciary duty claim despite the "business" nature of the decision. In support of this proposition they cite *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154 (6th Cir.1988). The citation cannot stand. *Berlin* holds that, while the decision to offer certain retirement benefits is a non-fiduciary business decision, an employer has a fiduciary duty not to make material misrepresentations to *potential* plan participants who might rely on such representations to their detriment. In the present case, however, there is no suggestion that Defendants misrepresented what the SVRO benefit was or who was eligible for it; nor is there the slightest suggestion that Plaintiffs somehow changed their behavior as a consequence of any misrepresentation. Plaintiffs were never potential participants in the SVRO, hence no fiduciary duty, in the sense of *Berlin,* was owed them as to the proposed benefit. To the extent that there may be a dispute of fact over whether COMSAT provided accurate or complete information concerning the downsizing of COMSAT divisions, the dispute is simply not germane to

the issues at hand. Defendants are entitled to summary judgment with regard to Count II of the Complaint.

## V.

■ Count III is styled "Interference with Protected Rights". Although the count is somewhat amorphous, citing to no clear-cut theory or statute, Plaintiffs' counsel advised at oral argument that the count derives from 29 U.S.C. § 1140, otherwise known as ERISA § 510.[2] That provision reads as follows:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

Plaintiffs' theory is that, after making the business decision to downsize and present an SVRO, COMSAT had a duty to treat all potentially eligible participants according to the same standards, i.e. not to discriminate against them. According to Plaintiffs, COMSAT acted discriminatorily when it advised them that they were not eligible for the SVRO. The most forceful authority that Plaintiffs can muster in this regard, however, is that the legislative history of ERISA demonstrates that Congress intended Section 510 to be "a broad remedial measure". Defendants, on the other hand, have countered with considerably more precise legislative history, citing, among other sources, *West v. Butler,* 621 F.2d 240 (6th Cir.1980):

> The legislative history [of Section 510] reveals that the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining *vested* pension rights.

*Id.* at 245 (emphasis added).

In other words, to the extent that such rights have not vested, no claim of discrimination would lie.

The United States Court of Appeals for the Seventh Circuit in *Deeming v. American Standard, Inc.,* 905 F.2d 1124 (7th Cir.1990), saw the matter just that way. Former employees of American Standard who had lost their jobs in a plant shut-down sued their former employer's pension board, alleging that the company had illegally interfered with their right to acquire additional service credit for pension purposes without doing further work, i.e. to "creep" into the pension. They contended that this interference with their right to "creep" into the pension violated Section 510 of ERISA. The *Deeming* court rejected that argument with this observation:

> To say that the 2–year "creep" provision was eliminated in order to prevent the appellees from obtaining the benefits of the 2–year "creep" provision is a tautology which highlights the fact that this sort of allegation cannot support a § 510 claim. As the First Circuit noted in *Aronson,* § 510 "relates to discriminatory conduct directed against individuals, not to actions involving the plan in general.... An overly literal interpretation of [§ 510] would make illegal any partial termination [of the plan], since such terminations obviously interfere with the attainment of benefits by the terminated group, and, indeed, are expressly intended so to interfere. Such cannot be the intent of the section, where the statute expressly recognizes partial terminations. See 29 U.S.C. § 1343(b)(4) (incorporating Tax Code definitions, 26 U.S.C. § 411(d)(3))."

905 F.2d at 1127–28 (quoting *Aronson v. Servus Rubber, Div. of Chromalloy,* 730 F.2d 12, 16 (1st Cir.), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984) (brackets in original)).

Similarly in the present case, since Plaintiffs were never accorded the right to SVRO benefits in the first place, they had no right with which Defendants could interfere.

Defendants are entitled to summary judgment with regard to Count III.

---

**2.** The only paragraph of the Complaint potentially comprehending this theory is paragraph 39 in which Plaintiffs contend that Defendants "unlaw-fully interfered with Plaintiffs' rights as protected by ERISA and the Plan."

## VI.

Although Defendants have filed no motion to dismiss or for summary judgment relative to Count I, the Court *sua sponte* considers that count at this time.

In Count I, Plaintiffs claim that Defendants refused to provide them with information in violation of 29 U.S.C. § 1024(a). Presumably, Plaintiffs intend to refer to § 1024(b), which pertains to information that a plan administrator is required to supply the participants and beneficiaries. The relevant language of the provision is as follows:

Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in Section 1022(a)(1) of this title ...

29 U.S.C. § 1024(b). Section 1022(a)(1) describes what information the summary plan description must contain and the manner in which it should be set forth. Plaintiffs seek an injunction ordering the Plan Administrator to provide them with the requested documents, pursuant to 29 U.S.C. § 1132(a)(3) and a statutory penalty of $100.00 per day from the date of such refusal, pursuant to 29 U.S.C. § 1132(c).

From a review of the record, it appears that this may no longer be a serious issue of contention between the parties. While Plaintiffs indicate that they separately asked for copies of the Plan, amendments pertaining to the SVRO, as well as board resolutions and minutes at which the SVRO was discussed, Yenyo concedes that as of the date of the filing of the Complaint, he had a copy of the Plan and the Trust Agreement, although not apparently of any amendments. Bowser suggests that he had received a letter denying him copies of any of the documents. However, in their Answer, Defendants contend that copies of Plan amendments were made available to Yenyo's counsel, so that presumably, for some considerable period of time, both Plaintiffs have had access to the plan and its amendments. Assuming *ar-guendo* that Plaintiffs were entitled to any information at all, it is doubtful that they were entitled to receive any more than they in fact received, *i.e.* the Plan and the amendments; they were not necessarily entitled to such additional documents as board resolutions or minutes. *See Shapiro v. Joint Indus. Bd. of Elec. Indus.*, 858 F.Supp. 356 (E.D.N.Y.1994); *Kopczynski v. Central States, Southeast and Southwest Areas Pension Fund*, 782 F.Supp. 350 (E.D.Mich.1992).

Having received the maximum documents to which they might be entitled in any event, all that would remain of Count I would be the matter of Plaintiffs' entitlement, if any, to the statutory penalty. Under 29 U.S.C. § 1132(c) the $100.00 per day penalty is a maximum allowance, the award of which is in the discretion of the Court. The Court has found that Plaintiffs are not entitled to the benefit that they sought in this case, and, from all that appears, Plaintiffs have suffered no detriment or prejudice due to any failure of the Plan Administrator to comply with disclosure requirements of ERISA. The Court notes that these factors would unquestionably bear upon its inclination to impose the statutory penalty in this case. *See Lesman v. Ransburg Corp.*, 719 F.Supp. 619 (W.D.Mich.1989), *aff'd*, 911 F.2d 732 (6th Cir. 1990). Thus, in all probability, whatever statutory damages Plaintiffs might be entitled to by reason by the Plan Administrator's non-compliance with disclosure requirements are apt to be *de minimis*.

Under the circumstances, with the understanding that Plaintiffs may petition the Court for reinstatement of Count I if they wish to pursue the matter, the Court has determined on its own motion to dismiss Count I without prejudice.