John Edward Wall, Jr. (argued), Dallas, TX, for Plaintiff–Appellant.

David Norman Kitner, Kimberly Summer Moore (argued), Strasburger & Price, Dallas, TX, for Defendants–Appellees.

Robert John Gregory, Equal Employment Opportunity Commission, Washington, DC, for Equal Employment Opportunity Commission, Amicus Curiae.

Before WIENER and PARKER, Circuit Judges, and LITTLE, District Judge*.

BY THE COURT:

Pursuant to the May 24, 1999 judgment of the Supreme Court of the United States, in 97–1008, *Cleveland v. Policy Management Systems Corp. et al.*, vacating the decision of this court in the captioned case and remanding it to us for further proceedings consistent with the Court's opinion,

IT IS ORDERED that this case be and it is hereby remanded to the United States District Court for the Northern District of Texas, for further proceedings consistent with the opinion of the Supreme Court of the United States.

LION'S VOLUNTEER BLIND INDUSTRIES, INC., a/k/a Volunteer Blind Industries, Inc.; Lion's Volunteer Blind Industries, Inc. Employee's Group Health Plan; Warren Barnett, Plaintiffs–Appellees,

Superior Services of East Tennessee, Inc., Intervening Plaintiff–Appellee,

v.

AUTOMATED GROUP ADMINISTRATION, INC.; Marketing Diversified Services, Inc.; International Underwriters, Inc.; Commonwealth Life Insurance Company, Defendants–Appellants,

William Thompson and Associates; William Thompson; Greeneville Insurance Agency; Paul H. Cook, Defendants.

No. 94–6053.

United States Court of Appeals,
Sixth Circuit.

Argued: Oct. 11, 1995

Decided and Filed: Nov. 2, 1999

* District Judge of the Western District of Louisiana, sitting by designation.

Thomas J. Markle (argued and briefed), Gary J. Rickner, Barrett & McNagny, Fort Wayne, Indiana, for Defendants–Appellants.

R. Franklin Norton (briefed), Geoffrey D. Kressin (argued and briefed), Norton & Luhn, Knoxville, Tennessee, for Plaintiffs–Appellees Lion's Volunteer Blind Industries, Inc., Lion's Volunteer Blind Industries, Inc. Employee's Group Health Plan.

Robert J. Jessee (argued and briefed), Jessee & Jessee, Johnson City, Tennessee, for Plaintiff–Appellee Leona Barnett.

J. Collins Landstreet, Elizabethton, Tennessee, for Intervenor–Appelee.

Before: MARTIN, Chief Judge; BATCHELDER, Circuit Judge; EDMUNDS, District Judge.*

### OPINION

BATCHELDER, Circuit Judge.

This permissive interlocutory appeal is before us for a second time. By a joint motion, Defendants–Appellants (collectively, "AGA"), pursuant to 28 U.S.C. § 1292(b), seek review of the district court's determination that § 514(a) of the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, did not preempt Appellees' (collectively, "Lion's")[1] state law misrepresentation claim.

We had previously remanded this matter for additional factual findings by the district court. *See* 1995 U.S.App. LEXIS 37073 (6th Cir. Nov. 27, 1995). Having received those findings and made a careful analysis of the applicable law, we now REVERSE the decision of the district court and find the state law claim to be preempted.

## I. Background

### A. Factual History Relevant to this Appeal

Appellee Volunteer Blind is a nonprofit organization. Blind individuals comprise seventy-five percent of its manufacturing work force. After being solicited by AGA's agents in 1991, Volunteer Blind decided to change its employee group health insurance from an "insured plan" with Blue Cross and Blue Shield ("Blue Cross") to a "partially self-funded plan" with AGA. Volunteer Blind did not see the actual plan before it took effect, but was assured by AGA that all employees and dependants covered under the Blue Cross plan would be equally covered under the self-funded plan.

Despite AGA's assurances, Appellee Warren Barnett, husband of Volunteer Blind employee Leona Barnett[2] and fully covered under the Blue Cross plan, was denied coverage by AGA when he submitted substantial medical claims for a serious illness. The denial of coverage was based on a clause in AGA's policy excluding from coverage persons defined therein as "totally disabled." It is undisputed that Barnett fit this definition on the day AGA's plan became effective.

### B. Procedural History

Lion's brought this action alleging several grounds for recovery of Barnett's medical expenses. Because the suit involved an employee welfare benefit plan, AGA removed it to federal court pursuant

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. We will use the term "Lion's" to refer to the Appellees collectively, and "Volunteer Blind" to specifically indicate Barnett's employer, Lion's Volunteer Blind Industries, Inc.

2. Warren Barnett has died since the initiation of this action, and we have granted Lion's motion to substitute Leona Barnett, in her position as Warren's executrix, as a party plaintiff. We will refer to them collectively herein as "Barnett."

to 29 U.S.C. § 1132(e)(1). Lion's then filed an Amended Complaint.

The district court granted partial summary judgment to AGA on Lion's claim for benefits and their allegation under ERISA of breach of fiduciary duty. Based on its reading of our prior decisions, however, the district court denied summary judgment as to the state law misrepresentation claim, agreeing with Lion's that it was not preempted by ERISA. At AGA's urging, the court certified an interlocutory appeal on the preemption question and we accepted the matter for review.

During oral argument before this Court, the main point of disagreement between the parties was whether or not Volunteer Blind's adoption of AGA's employee welfare proposal resulted in a "new plan" for ERISA purposes. Lion's urged that it did, while AGA argued that adoption of the AGA proposal merely altered the "funding status" of the existing Blue Cross plan. The primary import of this dispute is clear: if the prior plan never ceased to exist, then Barnett is entitled to benefits under it and the misrepresentation claim is moot. Furthermore, if the prior plan is still in effect, Barnett's claim is clearly preempted as "related to" an ERISA plan, both because Barnett is a beneficiary with ERISA standing and because AGA's alleged misrepresentation intimately involved an existing ERISA plan.

We found the factual findings in the record insufficient to resolve this question, so we remanded the matter on November 27, 1995, for further findings while retaining jurisdiction on the ultimate preemption question. In a January 3, 1996, Order, the district court formally determined that the plan at issue is a new one, and specifically noted that AGA's refusal to cover Barnett's expenses was sufficient to establish this plan as distinct from the previous Blue Cross plan.

## II. Analysis

On interlocutory appeal of a denial of summary judgment, we review the rec-

ord de novo, treating all genuine issues of fact as having been resolved in favor of the non-movants. *See Saylor v. Board of Education of Harlan County, Ky.*, 118 F.3d 507, 508 (6th Cir.1997).

### A. The District Court's Basis for Denying Summary Judgment

The district court cited two of our decisions in its discussion of the preemption issue. First, it cited *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991), for the proposition that ERISA preempts state law misrepresentation claims. Because *Cromwell* "involved a misrepresentation to a former plan beneficiary about whether or not she was still covered," however, the court distinguished it from the instant case.

Second, the court cited *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989), as holding that ERISA preemption applies only after the benefit plan is in existence. The court contrasted this decision to that of the Eleventh Circuit in *Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989), in which alleged misconduct in the sale and implementation of a plan was considered sufficiently related to the plan to be preempted by ERISA. The court concluded that because AGA's alleged misrepresentation occurred before Volunteer Blind adopted the new plan, *Perry* precluded a finding that the misrepresentation claim was preempted.

### B. The Proper Reading of Our ERISA Preemption Cases

The district court's decision, in our view, is based on a misapprehension of *Perry* and *Cromwell*.

#### 1. Perry v. P*I*E Nationwide

A careful analysis of the *Perry* holding reveals that the dispositive issue therein was not the timing of the alleged misconduct, but the kind of relief sought. *Perry* involved the creation of an ERISA-governed employee stock investment plan

("SIP"). *See* 872 F.2d at 158. The company persuaded employees to accept 15 percent wage reductions in exchange for the opportunity to buy into the SIP, claiming, among other things, that the SIP was necessary to prevent the company from closing and that the company would not be sold. *See id.* at 159. A few months later, the company was sold. A number of employees who, in reliance on those representations, had accepted the wage reduction and bought into the plan, sued the company for misrepresentation, seeking recission of the SIP and a return of their lost wages. The district court refused to find the claims preempted, reasoning that preemption applies only to actions taken after the plan comes into existence, not behavior meant "to get the plaintiffs to join the plan." *Id.*

Our analysis in *Perry* began with a discussion of the cases establishing the now-axiomatic observation that Congress intended ERISA to have the broadest possible preemptive effect. In particular, we noted that preemption will apply to any action "relating to" an ERISA plan, but not to one "too tenuous, remote or peripheral [ ] to warrant a finding that the [action] 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). We then retraced the district court's steps, acknowledging its chronologically based preemption paradigm. But we did not rely on that approach in affirming the outcome. Indeed, we noted that a number of district courts had declined to follow a strictly time-based test, and that several cases involving pre-plan activities had found preemption. *See Perry*, 872 F.2d at 161–62 (discussing *Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388 (E.D.Cal.1981) (observing that important areas of state concern with only indirect effects on ERISA plans should not be preempted); *Miller v. Lay Trucking Co.*, 606 F.Supp. 1326 (N.D.Ind.1985) (declining to preempt when fraud occurred before plan was created and only indirectly affected plan); *Childers v. Northwest Airlines,*

*Inc.*, 688 F.Supp. 1357 (D.Minn.1988) (rejecting time-based argument); *Mid America Hotel Corp. v. Bernstein*, 664 F.Supp. 384 (N.D.Ill.1987) (same)).

Instead of the district court's rigid chronological approach, we adopted the reasoning of *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.1981), which finds preemption when Congress (1) intends to occupy the field and (2) provides a remedy for the alleged misconduct. *See Perry*, 872 F.2d at 162. Having previously discussed Congressional intent, we turned to the second *Dependahl* standard. Because we were uncertain whether ERISA's applicable civil enforcement provision, 29 U.S.C. § 1132(a)(3), provided a means to achieve the recission and restitution remedies that the plaintiffs sought, we declined to find preemption.

This has been our consistent interpretation of *Perry*. For example, we recently had occasion to apply *Perry* to a very similar set of facts in *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934 (6th Cir.1997). The defendants in that case attempted to use *Perry* to escape preemption by arguing that the misrepresentations underlying their request for recission occurred before the parties had entered into the ERISA contract. *See id.* at 939–40. We disagreed with that argument for two reasons. First, we rejected the idea that the mere fact that the underlying actions occurred before the plan was entered into was determinative of the preemption question. Instead, we looked to the kind of relief sought by the plaintiffs, which clearly was the benefits they had been denied under the plan. Second, we determined that the recission claim, unlike the recission claim in *Perry*, had been raised by the defendants as an affirmative defense, was "inextricably interwoven" with the plaintiffs' claim for benefits, and was thus preempted. *Id.* at 940.

We think that the district court's blanket statement in the instant case that *Perry* prohibits preemption "[b]ecause the

misrepresentation claimed by the plaintiffs [ ... ] took place before the plan came into existence" is inaccurate. While *Perry* does not necessarily preclude courts in other ERISA-related contexts from taking into account the timing of the alleged wrong when determining whether it is related to an ERISA plan, *Perry*'s focus is not on chronology but rather on ERISA's ability to provide the remedy that the plaintiffs seek.[3] For this reason, we decline AGA's invitation on appeal to create a timing-based approach by adopting the reasoning of *Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th Cir.1990).

### 2. *Cromwell v. Equicor–Equitable HCA Corp.*

▉ The district court's description of *Cromwell* as holding that all misrepresentation claims are preempted by ERISA is also inaccurate. *Cromwell* itself instructs that "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." 944 F.2d at 1276; *see also Central States, Southeast and Southwest Areas Pension Fund v. Mahoning Nat. Bank*, 112 F.3d 252, 256 (6th Cir.1997) ("The fallacy of plaintiffs' argument is that the claims raised here are not for collection of a judgment nor are they fraud claims. Instead, they are poorly disguised ERISA withdrawal liability claims"); *Fisher v. Combustion Engineering, Inc.*, 976 F.2d 293 (6th Cir.1992) (same). The *Cromwell* plaintiffs alleged promissory estoppel, breach of contract, negligent misrepresentation and breach of good faith as grounds supporting their right to benefits denied to them under their ERISA plan. *See* 944 F.2d at 1276. We found that these state law claims went to "the very heart of issues within the scope of ERISA's exclusive regulation," *id.*, and thus they were clearly preempted, a holding entirely consistent with *Perry*.[4]

---

**3.** *See also Massachusetts Casualty Ins. Co. v. Reynolds*, 113 F.3d 1450, 1454 (6th Cir.1997) (explaining that *Perry*'s holding was "that state law claims for recission of an ERISA plan and for restitution based on fraud and misrepresentation occurring before the ERISA plan existed [are] not preempted, the claims not being for plan benefits or an increase in plan benefits" (internal quotations omitted)); *International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 298 (6th Cir.1991) (following the *Perry* holding that "ERISA will not preempt state law based on wrongs for which ERISA provides no remedy"); *Cairns v. Bridgestone/Firestone, Inc.*, 802 F.Supp. 152, 159–60 (N.D.Ohio 1992) (applying *Perry* in a similar manner).

**4.** We note that some confusion has resulted from *Cromwell*'s introductory statement "[n]or is it relevant to an analysis of the scope of federal preemption that appellants may be left without remedy." *Id.* (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). At least one district court in our circuit has puzzled over this statement, finding it to be an "apparent reversal of the *Perry* analysis." *Kopczynski v. Central States, Southeast and Southwest Areas Pension Fund*, 782 F.Supp. 350, 357 (E.D.Mich.1992). We think that in light of the remainder of the *Cromwell* opinion, and the *Caterpillar* opinion itself, the statement is entirely consistent with the *Perry* rationale.

The facts of *Caterpillar* are not analogous to those at hand. *Caterpillar* involved state law breach of employment contract claims. The question before the Court was whether these claims were "completely preempted" by § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 61 Stat. 156, 29 U.S.C. § 185, and thus removable to federal court. *See Caterpillar*, 482 U.S. at 388, 107 S.Ct. 2425. The Court held that they were not, since the claims involved only contracts with individual employees and not the collective bargaining agreement governed by LMRA § 301. *See id.* at 394–95, 107 S.Ct. 2425. The plaintiff employees, as masters of their complaints, were ·empowered to choose the grounds on which they would bring suit, and thus the "well-pleaded complaint rule" prevented removal. Central to *Caterpillar* was a discussion of a corollary to this rule called the "complete preemption" doctrine, by which the Court finds the "pre-emptive force of a statute [ ] so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *Id.* at 393, 107 S.Ct. 2425 (internal quotation marks omitted). This seldom-used doctrine is applied primarily in LMRA § 301 cases. *See id.*

It is in this context that the *Caterpillar* Court discussed the relevancy of federal reme-

## C. Application to the Facts of This Case

■ Much like the claims in the cases following *Perry* described above, the state law misrepresentation claim at issue here was brought to obtain the benefits-Barnett's medical expenses-that were denied by AGA's plan. Indeed, the district court's Order begins with the sentence, "This is an ERISA action to determine which party, if any, is liable for the medical expenses of Warren Barnett." We have considered whether Lion's prayer "[t]hat the plaintiffs be awarded damages in the amount of the allowable medical expenses incurred by plaintiff, Warren Barnett," can be read as requesting a kind of damages not related to an ERISA plan. We conclude, however, that regardless of the phrasing of the prayer for relief, a court entertaining the merits of this misrepresentation claim would be forced to calculate the benefits that would have been owed to Barnett under either a plan administered by Blue Cross, AGA, or some third party.[5] In that way, this suit is clearly unlike *Perry*, in which the plaintiffs sought an equitable remedy (recission) and a clearly defined monetary amount (lost wages) that in no way depended on an ERISA plan for determination. Instead, this claim is much more reminiscent of *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), wherein a former employee's claim that his employer wrongfully terminated him in order to avoid having to make payments to an ERISA plan was preempted, because it would require proof of the existence of the ERISA plan and the payments behind the employer's improper motive. We are therefore constrained to hold that AGA's state law claim is sufficiently "related to" the subject matter regulated by ERISA to be preempted.

dies to preemption. The Court observed in a footnote that "[t]he Court of Appeals also appears to have held that a case *may not be removed* to federal court *on the ground that it is completely pre-empted* unless the federal cause of action relied upon provides the plaintiff with a remedy." *Id.* at 391 n. 4, 107 S.Ct. 2425 (emphasis added). The Court rejected this analysis, explaining that the question of whether federal jurisdiction exists is separate from the question of the relief available after that jurisdiction attaches. *See id.*

This footnote is not inconsistent with the results of *Perry* and *Cromwell*. First of all, *Caterpillar* discusses the law of preemption only in the context of LMRA § 301, and thus is instructive but not necessarily controlling of our ERISA analysis. Second, *Caterpillar* is limited to the issue of "complete preemption" as a mechanism for establishing federal jurisdiction and thus allowing removal. Here, removal has already been accomplished. Given our decision today that the state law claim is completely preempted because ERISA provides the remedy sought, removal was obviously appropriate. But the claim could just as easily have been before us through supplemental jurisdiction in these circumstances. Finally, we note that even if the *Kopczynski* court were correct that *Caterpillar* requires us to abandon the *Perry* line of cases, we are unable to do so here. As noted above, we have followed *Perry* repeatedly since the *Caterpillar* decision, and thus it remains the law of this Circuit.

5. We have considered as well whether this sentence arguably could be seen as requesting damages for Volunteer Blind's failure to notify Barnett of his "COBRA" rights to maintain his original coverage with Blue Cross. While it was the responsibility of Volunteer Blind-a plaintiff here-to make this notification, their failure to do so is arguably due to AGA's misrepresentations.

We cannot, however, read Lion's state law misrepresentation claim that way. The most basic reason is that there is no indication whatever, in the briefs, oral argument or record, that Lion's has ever interpreted its own claim in this manner. Indeed, we note that in a separate cross-claim, Barnett is seeking damages from Volunteer Blind on this very basis, and in fact has secured a ruling (not currently before us) in his favor. So far as we can tell, Volunteer Blind has simply not made the argument before us that AGA is responsible for its failure to notify Barnett of his COBRA rights. Even if they had, Volunteer Blind would still need to establish that such a cause of action would not require proof of the existence of an ERISA-governed plan, or otherwise intrude on the exclusive province of ERISA regulation. We express no opinion on these matters, as they are not before us.

### III. Conclusion

For the foregoing reasons, the decision of the district court denying summary judgment on preemption is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion. Footnotes