MASSACHUSETTS CASUALTY INSURANCE COMPANY, Plaintiff–Appellee,

v.

Ronald A. REYNOLDS, Defendant– Appellant.

No. 95–6490.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1996.

Decided May 28, 1997.

---

ARGUED: Shelby R. Grubbs, Miller & Martin, Chattanooga, TN, for Appellee. Hugh P. Garner, Garner, Lewis & Prickett, Chattanooga, TN, for Appellant. ON BRIEF: James T. Williams, Miller & Martin, Chattanooga, TN, for Appellee. Hugh P. Garner, Garner, Lewis & Prickett, Chattanooga, TN, for Appellant.

Before: LIVELY and NELSON, Circuit Judges; HACKETT, District Judge.*

## OPINION

DAVID A. NELSON, Circuit Judge.

This appeal arises out of two lawsuits that were consolidated by the district court. The first was brought by Ronald A. Reynolds against Massachusetts Casualty Insurance Company for breach of a disability insurance

---

* The Honorable Barbara Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

contract. Filed initially in a state court, this action was removed to federal district court by Massachusetts Casualty. In the second action Massachusetts Casualty sought a declaratory judgment regarding the same insurance policy. Following the consolidation of the actions, the district court entered summary judgment in favor of Massachusetts Casualty. *Reynolds v. Massachusetts Cas. Ins. Co.*, 900 F.Supp. 915 (E.D.Tenn.1995).

Mr. Reynolds has appealed, contending that it was error for the district court to hold, as it did, (1) that the claims against Massachusetts Casualty were preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and (2) that the denial of benefits was justified under the terms of the policy. Upon *de novo* review we conclude that although Mr. Reynolds' claims are governed by ERISA, the record as it now stands does not warrant summary judgment. We shall therefore reverse the judgment.

## I

Mr. Reynolds was employed in 1989 as comptroller of the Navarre Company, a private investment partnership. The company was dissatisfied with the disability insurance coverage then in force for its five or six employees, and Mr. Reynolds was assigned the task of locating a new carrier. After discussions with Joseph Cofer, a Massachusetts Casualty agent with whom Mr. Reynolds was acquainted, Reynolds recommended Massachusetts Casualty.

The Navarre Company accepted the recommendation and purchased an individual disability insurance policy from Massachusetts Casualty for each employee. The policies contained a "common employer rider" under which Massachusetts Casualty agreed to accept a ten percent reduction in premium as long as the individual policyholder continued in Navarre's employ and as long as at least five Navarre employees were insured under similar policies. The premiums were to be paid by Navarre under a "common billing invoice" unless and until an employee left the company, at which time the employee, if he wanted his coverage continued, could start paying his own premiums.

On October 17, 1989, as part of the changeover to Massachusetts Casualty, Mr. Reynolds completed an individual application for disability coverage. The application failed to disclose certain preexisting medical conditions, including Meniere's Syndrome, "a disorder characterized by hearing loss, dizziness, blackouts and nausea." *Reynolds*, 900 F.Supp. at 918 n. 3. Mr. Reynolds maintains, however, that he disclosed his entire medical history to Mr. Cofer; that the signature page of the application contained no questions about medical history; and that Mr. Cofer led him to believe that the document had no other pages.

Mr. Reynolds' employment with Navarre ended on April 10, 1992, and thereafter he paid his disability insurance premiums himself. The premiums were ten percent higher, the price advantage of the common employer rider having been lost, but the disability policy was not otherwise affected by Mr. Reynolds' departure from Navarre.

In May of 1992 Mr. Reynolds filed a claim for total disability based on a tentative diagnosis of multiple sclerosis. Massachusetts Casualty began making monthly benefit payments soon thereafter, eventually paying Mr. Reynolds a total of $9,900. While investigating the claim, however, Massachusetts Casualty learned of the preexisting medical conditions. On September 15, 1992, the insurance company notified Reynolds by letter that his failure to disclose these preexisting conditions constituted "fraudulent misstatements" under the incontestability clause of the policy. The company said that it was rescinding the policy and denying the claim.

In May of 1993 Mr. Reynolds sued Massachusetts Casualty and Mr. Cofer in the Circuit Court of Hamilton County, Tennessee, alleging that Cofer had been informed of the medical conditions when the coverage was applied for and that Massachusetts Casualty was therefore liable on the policy. This state court action was ultimately dismissed voluntarily. In May of 1994 Massachusetts Casualty brought a declaratory judgment action against Reynolds and Cofer in the United States District Court for the Eastern District of Tennessee. Mr. Reynolds then com-

menced a second action in state court, setting forth claims against Mr. Cofer for fraud and breach of contract and against Massachusetts Casualty for specific performance and for a money judgment based on bad faith. This action was removed to the district court on the ground that Reynolds' claims were preempted by ERISA.

Meanwhile, Massachusetts Casualty had moved for summary judgment in the declaratory judgment action, and Reynolds had moved to dismiss the action on the grounds that the insurance company's complaint raised no ERISA issues and that diversity jurisdiction was lacking. Mr. Reynolds subsequently moved for a remand of his state court action, and Massachusetts Casualty moved for summary judgment in that action as well.

The district court granted both of Massachusetts Casualty's motions for summary judgment; denied Reynolds' motion to dismiss the declaratory judgment action; denied Reynolds' remand motion, except for the claims against Cofer; and entered judgment for Massachusetts Casualty in the amount of $6,568.62, this being the difference between the benefits Reynolds had received and the premiums he had paid. See *Reynolds,* 900 F.Supp. at 928. Mr. Reynolds has perfected a timely appeal.

## II

### A

■ Mr. Reynolds concedes that his disability insurance policy was initially part of an "employee benefit plan" governed by ERISA. He contends, however, that the disability insurance coverage purchased by Navarre was a "group policy," and that when he left Navarre and began making the premium payments himself the policy was "converted" to an individual policy not governed by ERISA. Mr. Reynolds invites us to follow *Mimbs v. Commercial Life Ins. Co.,* 818 F.Supp. 1556 (S.D.Ga.1993), where the court held that state law claims arising out of a

"conversion" policy are not preempted by ERISA. "[O]nce conversion has occurred and the policy is in force," according to *Mimbs,* "there is no longer any 'integral connection' between the individual conversion policy and the ERISA plan that gave rise to the right to convert." *Id.* at 1562.

We are not persuaded that Mr. Reynolds' post-employment coverage was "conversion" coverage. As stated above, Navarre did not buy a group policy. What it bought was five or six individual policies, including one for Mr. Reynolds. When Reynolds left Navarre, his individual policy remained in force without change.

Because Mr. Reynolds' coverage remained in effect under the same policy that had been in force since January 1, 1990, his post-employment coverage bears a strong resemblance to the "continuation coverage" that the plaintiff in *Mimbs* enjoyed for a limited period of time following the termination of his employment.[1] The *Mimbs* court held that any claim under the continuation coverage was preempted by ERISA. *Mimbs,* 818 F.Supp. at 1561. If the logic of this holding is followed here—and we see no reason why it should not be—it compels the conclusion that Mr. Reynolds' claims against Massachusetts Casualty are likewise governed by ERISA.

### B

■ Mr. Reynolds' next argument runs along these lines. Prior to January 1, 1990, there was disability coverage under a policy that Navarre had purchased some years earlier from Provident Life & Accident Insurance Company. The Provident policy, which had become incontestable as to Mr. Reynolds, was in full force and effect throughout 1989—and this was the only ERISA disability policy by which Reynolds was covered during the time when Massachusetts Casualty's agent, Joseph Cofer, is said to have been making misrepresentations about the proposed Massachusetts Casualty policy. Mr. Reynolds maintains that under *Perry v.*

1. The continuation coverage provided under the group policy in *Mimbs* was mandated by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). See 29 U.S.C. § 1161(a).

COBRA applies to group health plans, and has nothing to do with disability insurance of the sort with which we are concerned in the case at bar.

*P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), ERISA cannot govern a claim against Massachusetts Casualty that stands or falls on misrepresentations claimed to have been made by the company's agent before there was any Massachusetts Casualty policy to which ERISA could apply.

■ We do not believe that *Perry* compels acceptance of this argument.[2] *Perry* recognized that "the Supreme Court has given ERISA a broad construction with respect to its preemptive effect on state law and state actions that 'relate to' an employment benefit Plan." *Id.* at 160. *Perry* did hold, to be sure, that state law claims for recission of an ERISA plan and for restitution based on fraud and misrepresentation occurring before the ERISA plan existed were not preempted, the claims not being for "plan benefits or an increase in plan benefits." *Id.* at 162. The case also implied, however, that a plaintiff's state law claims for benefits under an ERISA plan are preempted by ERISA even though based on wrongful conduct occurring prior to the existence of the ERISA plan. *Id.* at 161–62. Mr. Reynolds' specific performance claim against Massachusetts Casualty is a claim for "benefits under the plan," and is, therefore, preempted.[3]

Our conclusion is consistent with that reached in *Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th Cir.1990). Like Mr. Reynolds, the plaintiff in *Perkins* asserted state law claims against both an insurance company and an insurance agent. The agent was said to have "fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage...." *Id.* at 473. The Fifth Circuit held that the claim against the insurance company was preempted by ERISA, while the claim against the agent—a claim related to the ERISA plan only indirectly—was not preempted.

## III

■ Mr. Reynolds also contends that the district court erred in granting summary judgment to Massachusetts Casualty. The district court held that no genuine issue of fact existed as to whether Mr. Reynolds had made "fraudulent misstatements" in his application, and that the denial of disability benefits was therefore proper under the terms of the plan. We believe the district court erred in so holding.

The incontestability clause in Mr. Reynolds' policy provides as follows:

"2. TIME LIMIT ON CERTAIN DEFENSES: (A) After two years from the date of issue of the Policy no misstatements, except fraudulent misstatements, made by you in the application for this Policy shall be used to void the Policy or to deny a claim for loss incurred or disability; as defined in the Policy; commencing after the expiration of such two-year period. (B) No claim for loss incurred or disability; as defined in the Policy; commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy." (Punctuation unchanged.)

---

**2.** We also reject Mr. Reynolds' argument that, according to *Perry*, ERISA does not preempt state law claims when there is no adequate remedy under ERISA. On its face, *Perry* might appear to endorse the idea that "preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted." *Perry*, 872 F.2d at 162, citing *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, *and cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). But as noted in *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 943 n. 5 (6th Cir.1995), *Perry* did not

actually hold that a plaintiff could pursue a state law claim "that fell within ERISA's civil enforcement provision merely because ERISA did not provide the desired remedy."

**3.** Mr. Reynolds' claim against Massachusetts Casualty for bad faith is also preempted. The Supreme Court has expressly held that bad faith claims for improper processing of claims "undoubtedly meet the criteria for pre-emption" under ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (internal quotation marks omitted).

Mr. Reynolds' claim arose more than two years after the date of issue of the policy. Under Part A of the incontestability clause, therefore, the misstatements made in the application could not be used to deny the claim unless the insurance company could prove that the misstatements were "fraudulent."

Massachusetts Casualty denied Mr. Reynolds' claim initially on September 15, 1992. As of that date, as far as the record discloses, the only basis the insurance company had for believing that Mr. Reynolds had acted fraudulently lay in the discrepancies between the medical information set forth in the policy application he signed in 1989 and the medical information that came to light following the submission of his claim in 1992. We do not doubt that the discrepancies gave the company a legitimate basis for taking the step it took in September of 1992—but it strikes us as curious that the company should suggest, as it does in its appellate brief, that the additional facts submitted by Mr. Reynolds subsequently were "superfluous" and should not be considered by the court in its review of Massachusetts Casualty's refusal to honor the claim.

■ It is true that the court "may consider only the evidence available to the administrator at the time the final decision was made." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991). But Mr. Reynolds was explicitly told by the insurance company, in a letter sent under date of September 15, 1992, that the denial of benefits was not necessarily final: "Should you be able to provide any ... facts which are inconsistent with our position," the letter stated, "we request that such be submitted promptly for our review and consideration. *We are always prepared to re-evaluate any action taken by the Company.*" (Emphasis supplied.)

Among the facts subsequently submitted by Mr. Reynolds—facts that were to be set forth in a sworn affidavit filed in the district court after the commencement of this litigation—were the following: that over a period of several months before he signed the application form, Mr. Reynolds disclosed his entire medical history to the insurance compa-

ny's agent, Joe Cofer; that agent Cofer told Reynolds that the insurance company was only interested in getting the name and address of Reynolds' primary physician; that Reynolds told agent Cofer that "Meniere's Syndrome" had been mentioned as a possible explanation of Reynolds' symptoms; that Reynolds was induced to sign the application form in blank without realizing that anything more than the signature page was involved; that Reynolds was not aware that the application contained a detailed questionnaire, much less that the questionnaire was being completed by the agent; that agent Cofer assured Reynolds that execution of the documents was merely a simple step in the changeover of disability coverage from the old carrier to the new; that Reynolds did not question agent Cofer's representations regarding Massachusetts Casualty's requirements, because a prior changeover of group health insurance coverage to the same company had involved the signing of nothing more than an enrollment card containing no medical questions at all; that when Massachusetts Casualty issued the disability policy (with the completed application attached), it delivered the policy not to Mr. Reynolds, but to the Navarre company; and that Mr. Reynolds never received a copy of either the policy or the application until after his employment was terminated in 1992.

We have not been made privy to Mr. Cofer's side of the story, and we do not know how a factfinder would evaluate Mr. Reynolds' testimony. But if we accept the Reynolds affidavit at face value—as we must on a motion for summary judgment—we cannot hold as a matter of law that Massachusetts Casualty has proved Reynolds guilty of making fraudulent misstatements.

■ To establish a fraudulent misstatement defense, a defendant insurance company must prove the following elements:

"1. [That the plaintiff m]ade a statement,

2. Such statement was false,

3. Such statement was material,

4. That the plaintiff knew the representation was false at the time it was made, or that it was made recklessly without any knowledge of its truth, and

5. The false representation was made with the intention of deceiving the defendant." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1481 (6th Cir.1991) (quoting jury instructions).

■ Mr. Reynolds may well have been negligent when he signed his application in blank. If the words of the incontestability clause are given their normal meaning, however, Massachusetts Casualty cannot prove that Mr. Reynolds acted fraudulently unless it proves (a) that he acted recklessly or with actual knowledge that the statements in the application were false, and (b) that he intended to deceive the insurance company. Mere negligence is not enough—and standing alone, the fact that the representations were materially false is not enough either. See *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992) (citing cases).

We find nothing to the contrary in *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950), a Tennessee case to which the district court turned for guidance in attempting to ascertain the appropriate federal rule. *Reynolds*, 900 F.Supp. at 925. The opinion in *Beasley* gives no indication that the insurance policy there at issue contained an incontestability clause under which the insurer had to prove that misstatements in the application for the policy were made fraudulently. In *Beasley*, moreover, the insured knew that the agent was filling out a medical history questionnaire as part of the application for insurance. And upon issuance of the *Beasley* policy, the policy (which presumably incorporated a copy of the completed application) was delivered to the home of the insured.

The case at bar thus differs from *Beasley* in at least three respects: (1) Mr. Reynolds must be deemed, at this point, to have had no actual knowledge of either the existence of the medical history questionnaire or the insurance agent's completion of the questionnaire; (2) the Massachusetts Casualty policy, with the completed application attached,

was not delivered to Mr. Reynolds until years after the policy was issued; and (3) the Massachusetts Casualty policy contained an incontestability clause under which the insurance company expressly waived any misrepresentation defense not predicated on the commission of actual fraud by the insured.

■ It is hornbook law that "[a]n incontestable clause means exactly what it says; that is, it cuts off all defenses based on misrepresentations where the policy is not affirmatively repudiated within the incontestable period." 18 Couch on Insurance 2d, § 72:75. Where such a clause, or a statute serving the purpose of such a clause,[4] provides for incontestability unless the insured party has made "fraudulent misstatements," Couch tells us in the same section of his treatise that "the quoted phrase requires the insurer to prove an intention to defraud. . . ." Any other interpretation, as the Supreme Court of New Jersey has said, would "drain the word ['fraudulent'] of its natural meaning." *Johnson v. Metropolitan Life Ins. Co.*, 53 N.J. 423, 439, 251 A.2d 257, 265 (1969).

On the record now before us, we are not prepared to say as a matter of law that Mr. Reynolds made the misstatements in question with actual knowledge and with intent to defraud. Accordingly, the district court's order granting summary judgment in favor of Massachusetts Casualty is hereby **REVERSED**, and the case is **REMANDED** to the district court for further proceedings not inconsistent with this opinion.

---

4. The first sentence of the incontestability clause at issue here was mandated by statute. See Tenn.Code Ann. 56–26–108(2). The statute was not enacted until 1955—some five years after the Tennessee Supreme Court decided *Beasley*.