**In re LINEAL GROUP, INC., Debtor.**

**Bankruptcy No. 395–06157.**

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 2, 1998.

James R. Kelley, Esq., Neal & Harwell, Nashville, for Debtor.

Jerry Scott, Esq., Scott & Kea, Murfreesboro, for Early Retirees Committee.

James J. Keightley, General Counsel, William G. Beyer, Deputy General Counsel, Stephen D. Schreiber, Assistant General Counsel, Kenneth J. Cooper, Esq., Pension Benefit Guaranty Corporation, Office of the General Counsel, Washington, D.C.

David M. Neff, Esq., Sara L. Fiedler, Esq., Jenner & Block, Chicago, IL, for the Official Unsecured Creditors' Committee.

## MEMORANDUM & ORDER

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether the Early Retirees of the Debtor have direct claims against this Chapter 11 estate for supplemental benefits and for the difference between what they will get from the Pension Benefit Guaranty Corporation ("PBGC") and what they were promised under the Debtor's defined benefit plan. The Early Retirees' direct claims are

preempted by the Employee Retirement Income Security Act ("ERISA").

## I.

In June 1995, prior to its bankruptcy filing, Lineal Group, Inc., offered early retirement to selected salaried employees. Thirty-six (36) employees (the "Early Retirees") accepted the early retirement offer. The Debtor's tax-qualified, single employer, defined benefit pension plan was amended to provide for the 1995 Voluntary Early Retirement Program. Employees who opted into the 1995 early retirement program were to receive their accrued benefit, a $300 per month Supplemental Benefit, and a retirement supplement.

On September 1, 1995, the Debtor filed Chapter 11. On November 27, 1995, the Debtor sold its assets pursuant to 11 U.S.C. § 363(b). Subsequently, the Debtor confirmed a liquidating plan under 11 U.S.C. § 1129(a).

Prior to confirmation, the Debtor and its Creditors' Committee attempted to modify the Early Retirees' benefits under 11 U.S.C. § 1114. By Order entered October 1, 1996, the court found the Supplemental Benefits to be "retiree benefits" within the meaning of § 1114, and denied modification. On January 23, 1997, the court classified the Supplemental Benefits as general unsecured claims for purposes of distribution. Allowance of those claims was not then before the court.

Unsuccessful in its bankruptcy court efforts to modify the 1995 early retirement benefits, the Debtor petitioned the IRS for authority to retroactively amend its employee benefit plan to eliminate the 1995 Early Retirement Program. On September 26, 1997, the IRS granted the Debtor's request for amendment "as it pertains to benefit payments not yet made as to the date of the [letter ruling]." Amendment was denied "to the extent it pertains to benefits that have already been paid as of the date of the [ruling]." The Early Retirees do not contest the Debtor's authority to unilaterally seek this relief through the IRS.

The Early Retirees and the PBGC[1] filed benefit plan related claims. The Early Retirees filed claims for the $300 per month Supplemental Benefit plus the difference between the benefit each early retiree will receive pursuant to ERISA and the full retirement benefits the Early Retirees would have received under the Debtor's benefit plan. Notwithstanding the elimination of the 1995 Early Retirement Program, the Early Retirees assert that they are entitled to direct claims against the estate because the Supplemental Benefit was used by the Debtor to induce these claimants to accept early retirement. That the Supplemental Benefits were paid from the pension fund, the Early Retirees reason, does not alter that the Debtor promised to pay these benefits yet failed to insure the solvency of its pension plan. The Early Retirees offer no statutory theory for recovery from the estate, and do not challenge the Debtor's actions under ERISA. Rather, the Early Retirees plead for an equitable remedy that will preserve at least their proportionate share as unsecured creditors. On similar grounds the Early Retirees contend they should not be denied their full benefits or at least their prorata share of the distribution to unsecured claims.

The PBGC filed eighteen proofs of claim. Those claims included amounts each retiree would received under the Debtor's benefit plan, including the Supplemental Benefits claimed directly by the Early Retirees. On preemption grounds, the PBGC objects to the Early Retirees' assertion of direct claims for the Supplemental Benefit and the difference between the benefit that will be administered by the PBGC and the amount the Early Retirees would have had under the Debtor's benefit plan. The PBGC views the Early Retirees' claims for prospective Supplemental Benefits as moot in light of the IRS's letter ruling eliminating the early retirement program.

The Debtor and the Creditors' Committee objected to the duplicity of the claims asserted by the Early Retirees and the PBGC.

---

1. The Debtor's pension plan has been terminated in accordance with the requirements of Title IV of ERISA. The PBGC administers the mandatory pension plan termination insurance program established under ERISA. In that capacity, the PBGC guarantees the payment of certain pension benefits upon plan termination. *See* 29 U.S.C. §§ 1321 & 1322.

They asserted that distribution to all retirees, including the Early Retirees, will be determined under ERISA and by the allowance of the PBGC's claims.

## II.

■■■ ERISA is a comprehensive remedial statutory scheme "designed to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). ERISA § 514(a) provides that ERISA will "supercede any and all State laws" to the extent those laws "relate to" any employee plan subject to ERISA. 29 U.S.C. § 1144(a). "ERISA's preemption clause casts a wide net." *Davies v. Centennial Life Ins. Co.,* 128 F.3d 934, 938 (6th Cir.1997). "State law," under ERISA, includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). "[A] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). That the state law is not specifically designed to affect an ERISA plan and does so only indirectly does not save the law from preemption. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 483–84, 112 L.Ed.2d 474 (1990). "[O]nly those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id.* "To determine whether a state law has a 'connection with' an ERISA plan, we must 'look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, ·as well as to the nature of the effect of the state law on ERISA plans.'" *Davies,* 128 F.3d at 939 (quoting *California Division of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, ——, 117 S.Ct. 832,

838, 136 L.Ed.2d 791 (1997) (internal quotation marks and citations omitted)).

The Court of Appeals for the Sixth Circuit has addressed the preemptive effects of ERISA in numerous cases. *See Davies,* 128 F.3d 934; *Massachusetts Casualty Ins. Co. v. Reynolds,* 113 F.3d 1450 (6th Cir.1997); *United Steelworkers of America v. United Engineering, Inc.,* 52 F.3d 1386 (6th Cir. 1995); *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133 (6th Cir.1993); *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991); *Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157 (6th Cir.1989).

In *Perry,* employees sued their former employer for fraudulent inducement in obtaining the employees' participation in an employee stock ownership plan ("ESOP") covered by ERISA. The employees accepted the ESOP and agreed to an irrevocable fifteen percent reduction in wages for 5 years. Shortly thereafter, the business was sold, contrary to representations made by the employer. In addition to wrongful inducement, the employees alleged fraud, coercion, misrepresentation, promissory estoppel, lack of consideration, and breach of fiduciary duty. The employees sought rescission of the ESOP or damages. The former employer moved to dismiss the action as preempted under ERISA. The district court held that ERISA preemption applies only once the benefit plan exists. Any claim arising out of the actions alleged to obtain the employees' participation were not subject to ERISA preemption. *Perry,* 872 F.2d at 158–59.

The Sixth Circuit affirmed in part and reversed in part. The claims for breach of fiduciary duty and lack of consideration were preempted. The breach of fiduciary duty claim was preempted because ERISA provides "a specific remedy for breach of fiduciary duty with respect to establishment of an ERISA plan." *Id.* at 161 (citing 29 U.S.C. §§ 1104 & 1132(a)). The lack of consideration claim, the court concluded, was preempted because it went "to the substance of the undertaking, which is an 'area of exclusive federal concern.'" *Id.* (citation omitted). The claims for fraud, misrepresentation, coercion, and promissory estoppel in relation

to obtaining the employees' participation in the ESOP were not preempted because the remedies of recission and recoupment were not available under ERISA. The employees did not seek benefits under the plan, rather they sought not to be bound by the plan and to recover the reduction in wages the plan required.

The Sixth Circuit has strictly limited *Perry* to its facts. *See MacKay v. Grumman Allied Indus., Inc.,* 993 F.Supp. 1068, 1069–70 (W.D.Mich.1997) (citing *Davies v. Centennial Life Ins.,* 128 F.3d 934, 943 (6th Cir.1997); *Massachusetts Casualty Ins. Co. v. Reynolds,* 113 F.3d 1450, 1453 (6th Cir.1997); *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 943 n. 5 (6th Cir.1995); *Fisher v. Combustion Eng'g, Inc.,* 976 F.2d 293, 297 (6th Cir.1992); *Kopczynski v. Central States, Southeast & Southwest Areas Pension Fund,* 782 F.Supp. 350, 356–57 (E.D.Mich.1992)). *See also Zuniga v. Blue Cross & Blue Shield of Michigan,* 52 F.3d 1395, 1402 (6th Cir.1995) (breach of contract claim that requires evaluation of employee benefits plan is preempted by ERISA). The Sixth Circuit recently explained *Perry's* narrow holding:

> *Perry* did hold, to be sure, that state law claims for recission of an ERISA plan and for restitution based on fraud and misrepresentation occurring before the ERISA plan existed were not preempted, the claims not being for 'plan benefits or an increase in plan benefits.' The case also implied, however, that a plaintiff's state law claims for benefits under an ERISA plan are preempted by ERISA even though based on wrongful conduct occurring prior to the existence of the ERISA plan.

*Massachusetts Cas. Ins., Co. v. Reynolds,* 113 F.3d at 1450, 1454 (6th Cir.1997) (internal citations omitted). *See also Davies,* 128 F.3d at 943.

In *Reynolds,* the plan beneficiary brought an action for fraud and breach of a disability insurance contract. He sought specific performance and a money judgment based on bad faith. Relying on *Perry,* the beneficiary argued that because the fraud and misrepresentations occurred while the plan was being negotiated, the action was not preempted by ERISA. The Sixth Circuit rejected the beneficiary's argument because his request for specific performance was a preempted claim for benefits under the plan. The court explained that *"Perry* did not actually hold that a plaintiff could pursue a state law claim 'that fell within ERISA's civil enforcement provision merely because ERISA did not provide the desired remedy." ' *Id.* at 1454 n. 2 (quoting *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 943 n. 5 (6th Cir.1995)). *See also MacKay,* 993 F.Supp. at 1071 ("[W]hether a plaintiff's state claims related to conduct occurring prior to participation in an employee benefit plan are preempted turns on the type of remedy the plaintiff seeks.").

Here, the Early Retirees claim against the bankruptcy estate is for benefits the Debtor amended out of the plan and for the difference between their full benefits and what will be paid by the PBGC. The grounds for these direct claims are not expressly stated, but sound in breach of contract, misrepresentation, and promissory estoppel in connection with inducing the Early Retirees to accept the early retirement package. The remedy they seek is specific performance—benefits under the plan. As in *Reynolds,* these claims of the Early Retirees are preempted by ERISA. The Early Retirees' claims "relate to" the Debtor's ERISA plan because they can only be calculated and evaluated under that plan. The plan existed when the Early Retirement Program was offered. The Early Retirees were participants under that plan prior to the amendment that forms the basis for their claims.

The Early Retirees seek to hold the Debtor liable as a guarantor of the solvency of the employee benefit plan. The insolvency of the plan, however, lends further support to preemption of the Early Retirees' claims for lost benefits. In *United Engineering,* the Sixth Circuit considered preemption in the context of a distressed termination of employee benefit plans. The union filed a claim under § 301 of the Labor Management Relations Act against the employer to collect supplemental or nonguaranteed benefits "payable to employees prior to retirement age in the event of a plant shutdown or physical disability." *United Eng'g,* 52 F.3d at 1388. The

employer and the PBGC responded that any claim for supplemental benefits was preempted by ERISA. The district court held that the union's claims were preempted based on the 1986 and 1987 amendments to ERISA that expanded ERISA coverage to nonguaranteed or supplemental benefits. The Sixth Circuit agreed:

> When an employer terminates a pension plan with insufficient funds, the employer becomes liable to the PBGC for "the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan." 29 U.S.C. § 1362(b)(1)(A).
>
> . . . .
>
> Prior to the 1986 and 1987 amendments to ERISA, an employer was liable to the PBGC only for the lesser of the unfunded guaranteed benefits or 30% of the employer's net worth, 29 U.S.C. § 1362(b)(2)(B) (Supp.1994), and the PBGC was obligated to pay only guaranteed benefits under 29 U.S.C. § 1322. The employer was not liable to the PBGC or to anyone else under the former statutory scheme for unfunded non guaranteed benefits.
>
> . . . .
>
> Many federal courts, including this circuit, perceived a gap in the statutory structure of ERISA regarding the payment of unfunded nonguaranteed pension benefits. They recognized, therefore, a federal common law action allowing employees to directly sue their employers to recover nonguaranteed benefits.
>
> . . . .
>
> In 1986, Congress addressed, for the first time, the protection of nonguaranteed pension benefits and amended ERISA by enacting the Single–Employer Pension Plan Amendments Act (SEPPAA), 29 U.S.C. § 1349 (repealed 1987). SEPPAA established a trust fund called the "Section 4049 trust" that would receive funds from employers and distribute those funds to plan participants to cover nonguaranteed benefits. SEPPAA made employers liable to the trustee for up to 75% of the amount of nonguaranteed benefits.
>
> In 1987, Congress repealed SEPPAA and enacted the Pension Protection Act

(PPA), 29 U.S.C. § 1362 (Supp.1994), which is the current law regarding payment of unfunded pension benefits. The PPA provides that the liability of an employer who terminates a pension plan to the PBGC "shall be the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan." 29 U.S.C. § 1362(b)(1)(A).

> As before the amendments, the PBGC is still required to pay all guaranteed benefits. Since the amendments, however, the PBGC must pay some portion of the nonguaranteed benefits. The portion is determined by the amount the PBGC recovers from the employer and the amount due to participants.... 29 U.S.C. §§ 1322(c)(2), 1322(c)(3)(A) (Supp.1994). The PBGC then allocates the nonguaranteed amounts according to the priority scheme set out in 29 U.S.C. § 1344(a) (1985 and Supp.1994).

> Several courts that have addressed the issue that confronts us today have held that ERISA now preempts direct actions against the employer. For example, the court in *In re Adams Hard Facing Co.*, 129 B.R. 662 (W.D.Okla.1991), held that participants in a pension plan could not recover monies directly from their employer's bankruptcy estate. *Id.* at 663. In so holding, the court stated:

> The debtors and the PBGC agree that if Plan participants make claims directly against the bankruptcy estate, the purposes of ERISA § 4022(c) [ (29 U.S.C. § 1322(c)) ] will be defeated. Under ERISA, the PBGC must collect the employer's unfunded benefit liabilities and distribute those amounts to plan participants within the priority scheme of § 4044(a) [ (29 U.S.C. § 1344) ]. The direct claims of the participants in the ... Plan are therefore disallowed. The PBGC is instructed to collect and allocate the unfunded benefit liability amounts in strict compliance with ... ERISA ....

*United Eng'g*, 52 F.3d at 1390–94.

*United Engineering* forecloses the Early Retirees' claims for the difference between

their full retirement benefits and the amount they will receive under ERISA from the PBGC.

■ Finally, even if the Early Retirees' estoppel claims for Supplemental Benefits are not preempted and if the Supplemental Benefits are welfare benefits,[2] the Sixth Circuit has limited the availability of estoppel actions under similar circumstances. In *Sprague v. General Motors Corporation,* 133 F.3d 388 (6th Cir.1998) (en banc), general retirees and early retirees challenged changes the company made to their health care plan. The retirees asserted that GM obligated itself to provide health care coverage cost free to retirees for life, and charged GM with breach of fiduciary duty, equitable or promissory estoppel and violation of the health care plans.

On the estoppel claims, the Sixth Circuit affirmed the district court finding that GM made no representations to the general retirees, but reversed the trial court's decision that GM was estopped by misrepresentations of the plan terms from upholding the plan changes as to early retirees. "Principles of estoppel, ..., cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Id.* at 404 (citations omitted). GM's plans, the court found, "unambiguously reserved ... the right to amend or terminate the plan." *Id.*

The Lineal Group plan unambiguously reserved to the Debtor the right to amend, modify or terminate the benefit plan at any time and to any extent consistent with ERISA. The plan amendment that estab-

lished the 1995 Voluntary Early Retirement Program specifically provided that the amendment did not affect, alter or vary any other term, condition or provision of the plan. Under *Sprague* the Early Retirees are not entitled to hold the estate directly liable for these benefits on estoppel grounds.

### III.

The objections of the Creditors' Committee and the PBGC to the direct claims of the Early Retirees against the estate are sustained. The direct claims of the Early Retirees for Supplemental Benefits and for the difference between benefits under ERISA and benefits under the Debtor's plan are disallowed.

---

2. ERISA classifies benefit plans either as "welfare benefit plans" or as "pension benefit plans." *See* 29 U.S.C. §§ 1002(1) & (2)(A). That a benefit plan might be both a welfare benefit plan and a pension plan is anticipated by the statute. 29 U.S.C. § 1002(3). Welfare benefit plans are "established or maintained for the purpose of providing [participants or beneficiaries], through the purchase of insurance or otherwise, [ ] medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits ...." 29 U.S.C. § 1002(1)(A). "A pension plan 'provides retirement income to employees' or 'results in a deferral of income by employees for periods extending to the termination of ... employment of beyond ....'" *Sprague v. General*

*Motors Corp.,* 133 F.3d 388, 400 (6th Cir.1998). Employers enjoy greater discretion in amending and terminating employee welfare plans. *Sprague v. General Motors Corp.,* 133 F.3d at 400 ("employers 'are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'") (citation omitted). The Sixth Circuit has recognized equitable estoppel and promissory estoppel actions under ERISA in the case of welfare benefit plans. *Sprague v. General Motors Corp.,* 133 F.3d at 403 n. 13: *Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir.1991). Estoppel theories have not been accepted in the case of pension plans. *See Richards v. General Motors Corp.,* 876 F.Supp. 1492, 1508 (E.D.Mich.1995) (citing *Armistead,* 944 F.2d at 1298).