Louis E. ZORELLA, Executor of the
Estate of Rita Zorella, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, Defendant.

No. 4:02 CV 2471.

United States District Court,
N.D. Ohio,
Eastern Division.

March 3, 2006.

Thomas J. Travers, Jr., Canfield, OH,
for Plaintiff.

Brett K. Bacon, Michael J. Holleran,
Frantz Ward, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION

(Regarding Docket No. 39, 42)

GALLAS, United States Magistrate Judge.

Plaintiff has moved for summary judgment in the matter of a group life, accidental death and dismemberment policy issued by defendant UNUM in the Select Group Insurance Trust for the benefit of employees of Danieli Corporation. Plaintiff moved to strike defendant UNUM's cross-motion due to untimely filing (Docket No. 42). Plaintiff is correct. However, the Court will accept defendant UNUM's motion as a brief-in-opposition to plaintiff's motion. This brief is absolutely necessary to resolve the issues presented in this matter since it incorporates UNUM's administrative record regarding Mr. Zorella's insurance policy and application for life insurance benefits.

As explained in the order concerning discovery, *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618–20 (6th Cir.1998) held that, "The logic of Rule 56 does not comport with the *Perry* and *Rowan* standard of review. Rule 56 is designed to screen out cases not needing a full factual hearing. To apply Rule 56 *after* a full factual hearing has already occurred before an ERISA administrator is therefore pointless." *Id.* at 619.[1] Fur-

---

1. *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir.1997).

ther pursuant to *Wilkins*, as explained in the prior order regarding discovery, the Court cannot accept plaintiff's "uncontested facts" based on unanswered requests for admission. Accordingly, in light of *Wilkins*, the court shall render its findings of fact and conclusions of law based on the administrative record.

Louis A. Zorella, Jr. had been employed by Danieli Corporation but his employment was terminated following reorganization on December 31, 1999. Plaintiff argues that the company asserted that there had been a material misrepresentation upon his application for portability insurance coverage. Plaintiff argues that UNUM is barred from denying payment of life insurance benefits due to the policy's incontestability clause. Defendant UNUM argues that the application for benefits proceeds was incomplete.

**Findings of Fact:**

1. On January 31, 2000, the deceased, Mr. Zorella, filed his Life Insurance Election of Portability Coverage ("Election Form") to continue coverage under his employer's group policy.

2. The Election Form stated that Mr. Zorella would not be eligible for portability coverage if he had a life-threatening illness:

> You are not eligible to apply for portable coverage for yourself and your dependants if you have a medical condition which has a material effect on life expectancy. Also, any dependant is not eligible for portable coverage if he or she has a medical condition which has a material effect on life expectancy. If you are not eligible for portable coverage or your portable coverage ends, you or your dependants may qualify for conversion coverage.

(UACL00185).

3. Mr. Zorella's signature on the Election form certified that he did not have a life-threatening medical condition:

> I CERTIFY THAT NEITHER I NOR MY DEPENDENTS FOR WHOM I AM ELECTING COVERAGE HAVE A MEDICAL CONDITION WHICH HAS A MATERIAL EFFECT ON LIFE EXPECTANCY. I UNDERSTAND THAT UNUM IS RELYING ON THIS CERTIFICATION AS A MATERIAL CONDITION TO ITS AGREEMENT TO PROVIDE THIS PORTABILITY COVERAGE.

(UACL00185).

4. The Election form provides that any life benefits will be reduced if UNUM determines claimant was not eligible for benefits:

> If UNUM determines at a later date that I was not eligible due to such a medical condition on the date portability coverage was elected for me or my dependents, any life benefits payable will be reduced to the amount of whole life coverage that my. or my dependants' premium would have purchased under the whole life policy offered through the Conversion Privilege.

(UACL00185).

5. Additionally, the continued group policy expressly limits portability coverage to eligible applicants:

> You are not eligible to apply for portable coverage for yourself if
> -you have an injury or sickness, under the terms of this plan, which has a material effect on life expectancy, . . .
>
> If we determine that because of an injury or sickness, which has a material effect on life expectancy, you were not eligible for portability at the time you elected portable coverage, the

benefit will be adjusted to the amount of whole life coverage the premium would have purchased under the Conversion Privilege. (UACL00084).

6. On January 10, 2002, Mr. Zorella died. (UACL00189).

7. The Certificate of Death listed acute circulatory failure as the immediate cause of death due to coronary thrombosis with myocardial infraction, cardiac irregularities (existing for 4 years prior to death) and arteriosclerosis (existing for 15 years before death). (UACL00189).

8. On February 5, 2002, UNUM requested an Authorization Form and Statement of Medical Treatment Form from Mrs. Zorella. UNUM required that she execute, complete, and return both forms in a postage pre-paid envelope. (UACL00011).

9. Under the continued group policy, Mr. Zorella agreed that UNUM could deny benefits if he failed to provide authorization to obtain medical records:

> WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?
>
>> If claim is based on death, proof of claim, provided at your or your authorized representative's expense, must show the cause of death. Also a certified copy of the death certificate must be given to us.
>>
>> In some cases, you will be required to give UNUM authorization to obtain additional medical and non-medical information as part of your proof of claim or proof of continuing disability. UNUM will deny your claim if the appropriate information is not submitted.

(UACL00099–00098).

10. Mrs. Zorella did not respond to the February 5, 2002 request.

11. UNUM made three more requests for these forms to be executed and returned. UNUM wrote her on March 4, 2002, March 25, 2002, and April 15, 2002, each time requesting doctor/hospital names and addresses in order to review and administer the claim. (UACL00013) (UACL00016–00015).

12. UNUM did not receive a response until April 26, 2002, when Mrs. Zorella's counsel indicated difficulties in obtaining medical records. (UACL 00018).

13. On April 29, 2002, UNUM promptly responded to Mrs. Zorella's counsel enclosing copies of the Portability Application and the Group Life Certificate that contained the above-quoted provision that UNUM would deny benefits if authorization was not provided. (UACL00019).

14. UNUM did not receive a response for nearly five months. On September 30, 2002, UNUM received a letter from Mrs. Zorella's counsel which referenced a June 21, 2002 letter and enclosed a copy of a draft Complaint stating that a lawsuit against UNUM would be filed. Mrs. Zorella's counsel also requested that the letter be considered a request to initiate the appeal process. (UACL00026–00025).

15. On October 3, 2002, UNUM responded to Mrs. Zorella's counsel acknowledging receipt of the appeal. (UACL00027).

16. The continued group policy provided that UNUM had at least 60 days to conduct a full and fair review of the claim:

> WHAT DO YOU DO TO APPEAL?
>
> . . .
>
>> UNUM will make a full and fair review of the claim and may require additional documents as it deems necessary or desirable in making such a review. A final decision on the review shall be made not later than 60 days following receipt of the written request for review. If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension, and a

decision shall be made not later than 120 days following receipt of the request for review.

(UACL00032)

17. UNUM by letter dated October 7, 2002, reminded Mrs. Zorella's counsel indicating that it had never received any letter dated June 21, 2002 from counsel, and reminding Mrs. Zorella's counsel:

> In your letter dated September 26, 2002 you stated your intent to institute legal action unless the claim is paid. However, to date we have not received the completed Authorization Form or Medical Treatment Form request of Ms. Zorella as proof of claim eight months ago, on February 5, 2002. Ms. Zorella was advised that receipt of these completed forms was requisite to any further consideration of her claim.
>
> .    .    .    .    .
>
> Lacking Ms. Zorella's response to the proof of claim request of her, UNUM cannot comply with your request for the release of a benefit payment at this time. If Ms. Zorella wishes for UNUM to provide any further consideration under this claim, the requested documentation must be received within two weeks of the date of this letter so that the claim investigation may continue. I have enclosed an additional copy of the Authorization Form and Medical Treatment Form provided to Ms. Zorella February 5, 2002.

(UACL000113–000111).

18. Mrs. Zorella's counsel responded by submitting medical records. He did not provide the completed Authorization or the completed Medical Treatment Form. UNUM could not ascertain that these medical records were complete because they passed through Mrs. Zorella's counsel's hands before being forwarded to UNUM (UACL00153–00118).

19. UNUM wrote Mrs. Zorella's counsel on October 27, 2002, acknowledging receipt of his letter and the partial medical records from Dr. James Ventresco. UNUM reiterated that the requested Authorization and the requested Medical Treatment Forms had never been received. UNUM stated it was willing to re-open the claim for review, but continued to request and require the above-mentioned medical forms (UACL 00163–00162).

20. UNUM reviewed the records of Dr. Ventresco. On November 8, 2002, UNUM wrote Mrs. Zorella's counsel indicating findings of hypertensions and cardiac problems from the medical records and noting those records were incomplete.

> Therefore based on the available medical records, Mr. Zorella had uncontrolled hypertension. Antihypertension medications were prescribed, as well as medications (Lanoxin and Quinidine) commonly used to treat arrhythmia. There is no indication as to why these medications were prescribed.
>
> The available records seem to be incomplete. Complete office records from Dr. Ventresco, as well as any treating cardiologist or hospital records would be needed to determine if Mr. Zorella had a condition that had a material effect on life expectancy at the time the portability application was signed.

UNUM made another request that Mrs. Zorella execute and return an Authorization Form, that was again provided, and also that the names of doctors and hospitals be submitted so UNUM could continue the review of the claim. (UACL 00174–00172),

21. On November 12, 2002, Mrs. Zorella's counsel stated that UNUM's letter of November 8, 2002 was "not a satisfactory response" whereupon Mrs. Zorella filed this action. (UACL 00183).

22. Despite numerous requests both to Mrs. Zorella and her counsel, an executed Medical Authorization Form was never provided; nor has Mrs. Zorella submitted the requested list of medical providers.

23. The policy unequivocally gives UNUM the right to request medical information and the right to deny a claim for failure to comply with the request for these forms.

24. UNUM has discretionary authority to interpret the terms of the policy:

> When making a benefit determination under the Summary of Benefits, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits.

(UACL00106)

25. The policy at issue also contains an incontestability clause with respect to applications for coverage:

> HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?
>
> UNUM considers any statements you or your Employer make in a signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:
> — reduce or deny any claim; or
> — cancel your coverage from the original effective date.
> We will use only statements made in a signed application or an evidence of insurability form as a basis for doing this.

> Except in the case of fraud, UNUM can take action only in the first 2 years of coverage is in force.
>
> If the Employer gives us information about you that is incorrect, we will:
> — use the facts to decide whether you have coverage under the plan and in what amounts; and
> — make a fair adjustment of the premium.

**Conclusions of Law:**

1. This action is covered by the Employee Retirement Income Security Act of 1974 USC 1001 *et seq.* (September 2, 2003 Order of Judge Economus)(Plaintiff's Amended Complaint at ¶ 1). Plaintiff has brought a claim under 29 U.S.C. § 1132(c)(1)(B), which permits a beneficiary to bring a lawsuit to challenge the plan administrator's denial of benefits.

2. The group life, accidental death and dismemberment policy issued by UNUM is the Select Group Trust for the benefit of employees of Danieli Corporation, it was an employee welfare benefit plan for purposes of 29 U.S.C. § 1002(1), and the parties do not contest that Mr. Zorella's portable portion continued to be such. See *Massachusetts Cas. Ins. Co. v. Reynolds,* 113 F.3d 1450, 1453 (6th Cir.1997).

3. Mr. Zorella was a participant under the plan for purposes of 29 U.S.C. § 1002(7) and Mrs. Zorella was a beneficiary eligible to receive a benefit under the plan for purposes of 29 U.S.C. § 1002(8).

4. UNUM was the plan administrator for purposes of 29 U.S.C. § 1002(16)(A).

5. When the plan administrator has discretionary authority to interpret and enforce the plan, the Court must review the Fund's decisions under the arbitrary and capricious standard of review. See *Whisman v. Robbins,* 55 F.3d 1140, 1143–44 (6th Cir.1995); *Firestone Tire & Rubber*

*Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

6. When determining whether denial of benefits was arbitrary and capricious the court is "required to consider only the facts known to the plan administrator at the time he made his decision." *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 381 (6th Cir.1996).

7. At the heart of this case is whether the incontestability clause supercedes the death benefit application provision allowing UNUM to obtain "additional medical and non-medical information" as part of the proof of claim and to make direct contact with medical service providers.

8. Misstatements made in the application form could not be used to deny the claim unless the UNUM could prove that the statements were "fraud." See *Massachusetts Casualty Ins. Co. v. Reynolds,* 113 F.3d 1450, 1455 (6th Cir.1997).

9. Plaintiff mistakenly conflates the application process for insurance coverage under the policy with the application for death benefits under the policy. The incontestability clause clearly relates to the policy application, not the death benefit application. The application for benefit provisions are independent of the incontestability clause. Consequently the failure to provide medical release forms and medical treatment forms is independent of the incontestability provision. The incontestability clause does not excuse noncompliance with the death benefit application process as governed by the life insurance plan.

10. UNUM's interpretation of the policy provision medical authorization was logical and reasonable under the terms of the policy.

11. The terms of the life insurance plan specifically require the participant "to give UNUM authorization to obtain additional medical and non-medical information" as "part of the proof of claim."

12. Since Mrs. Zorella never submitted the authorization and the medical treatment form as had been repeatedly requested, the application process was incomplete. UNUM's decision was neither arbitrary nor capricious based on the unambiguous language of the life insurance plan that stated UNUM would "deny your claim if appropriate information is not submitted."

13. Defendant UNUM contends that Mrs. Zorella failed to exhaust her administrative remedies because this lawsuit was filed in state court before there was a final claim determination. It is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim. *Hill v. Blue Cross and Blue Shield of Michigan,* 409 F.3d 710, 717 (6th Cir. 2005); *Costantino v. TRW, Inc.,* 13 F.3d 969, 974 (6th Cir.1994). UNUM relates that the group policy provides that a claimant may appeal an initial adverse claim decision to UNUM (UACL 000032). Mrs. Zorella's appeal of the adverse decision was received on September 30, 2002 (UACL 00026). On October 3, 2002 UNUM wrote Mrs. Zorella's counsel to inform him that a determination would be made in 60 days unless there were extenuating circumstances. UACL 00027. On October 16, 2002 Mrs. Zorella's counsel submitted partial medical records to UNUM and based on these records, UNUM returned the appealed file to the customer care specialist in charge of initial claim review directing the investigation to be reopened. (UACL 00192–00191). UNUM states that within the 60–day review period Mrs. Zorella filed her case in state court, which case was later removed to federal court. UNUM states that at that time it was attempting to conduct a

full and fair investigation of the claim and thus there was not a final claim determination prior to Mrs. Zorella's commencing her lawsuit.

14. There is no evidence that UNUM acted on Mrs. Zorella's appeal. Further, UNUM does not contend that this legal action prejudiced any appeal rights under the terms of the policy. Consequently, it appears that Mrs. Zorella can return and continue in the administrative review process with the insurance company.

15. Accordingly, this matter is dismissed for non-exhaustion of administrative remedies provided under the UNUM Life Insurance plan.